# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EDNA DOMINGUEZ,

        Plaintiff,

v.                                                                             Civil No. 98-1136 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed June 7, 1999 **[docket # 7]**. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff was forty-three years old at the time of the administrative hearing. She alleges a disability which commenced February 12, 1994, due to back problems, thyroid problems, diabetes, depression, anxiety, and arthritis. Ms. Dominguez has a high school education (G.E.D) and has worked in the past as a key entry operator and a cashier.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Plaintiff was not disabled as she could perform her past relevant work as a key entry operator. The Appeals Council denied Ms. Dominguez' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C.

§405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred by disregarding Plaintiff's complaints; (2) the ALJ erred by finding that Plaintiff's psychiatric problems were under control; (3) the ALJ failed to include in his decision Plaintiff's symptoms and the vocational expert's (VE) conclusion in the third hypothetical concerning Plaintiff's need to take frequent breaks which renders her unemployable; and (4) the ALJ erroneously interpreted the psychiatric evidence.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A); § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

§405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred by disregarding Plaintiff's complaints; (2) the ALJ erred by finding that Plaintiff's psychiatric problems were under control; (3) the ALJ failed to include in his decision Plaintiff's symptoms and the vocational expert's (VE) conclusion in the third hypothetical concerning Plaintiff's need to take frequent breaks which renders her unemployable; and (4) the ALJ erroneously interpreted the psychiatric evidence.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A); § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Ms. Dominguez has two grown children and lives alone. She is able to drive, but doesn't, mostly because the medications she is taking for depression leave her drowsy. Tr. at 252-53. In 1994, she quit her last job as cashier because she was making mistakes, taking much time off, and because she found herself becoming hostile towards coworkers and customers. At one point, she remembers hitting "one of the guys with a roll of paper towels." Tr. at 273. She also stated that she quit because, following a robbery that occurred earlier in the store that day, she and other workers felt the lack of store security was dangerous, and all the workers decided to quit. Tr. at 271, 287.

8. Plaintiff follows a diet and oral medication regime for her diabetes (Plaintiff is 5'2" and weighs 225 pounds). Tr. at 251, 290. The disease is somewhat controlled, but her blood sugar fluctuates throughout the day, and she frequently needs to take second doses to bring it down. Tr. at 294. She told the ALJ that she notices that an increase in pain in her back and legs causes an increase in her blood sugar. Tr. at 292. She also told the ALJ that even if the oral medications don't control the diabetes, she is not willing to go on insulin since she feels insulin has nothing to offer her. Both her father and sister used insulin, but still died of diabetic complications. Tr. at 260, 289.

9. Ms. Dominguez stated that her depression has worsened over the years since 1981. She attempted suicide in 1981, and although she has not attempted suicide again, she said that she has suicidal thoughts about once a week. She stated that it was only her small grandson which

3

prevents her from making another attempt. Tr. at 264, 289. Plaintiff told the ALJ that she isolates herself in her room sometimes for days, and stays in bed all day because there is "no reason to get up." Tr. at 264, 285. The imipramine which she takes for depression has helped the uncontrollable crying she was prone to and "takes the edge off" the depression, although it has not improved her ability to sleep. Tr. at 266, 279. Medication has also helped reduce Plaintiff's anxiety attacks from a frequency of about three times a day and every night, to a frequency of about twice a day, each lasting about 15 minutes and no attacks at night. Tr. at 266. She continues to see both her therapist and her psychiatrist once a month. Tr. at 297.

10. Ms. Dominguez also complains of constant back pain, which allegedly becomes so severe that it "just makes [her] cry." Tr. at 267, 300. She takes Robaxin to help relieve the pain, as well as any muscle relaxants, pain killers and liniments that are available (e.g., Ben Gay). She claims that the Robaxin makes her drowsy and forgetful and that it numbs the pain, but does not take the pain away. Tr. at 266-67, 269. Plaintiff alleges other complaints: migraine headaches, which she states have increased in frequency to daily, Tr. at 296, a lack of energy, Tr. at 295, an inability to concentrate, Tr. at 297-98.[1]

11. Plaintiff cares for herself in making small meals and cleaning up after herself, but told the ALJ that sometimes she leaves the dishes unwashed for two to three days when she feels too depressed. Tr. at 281. She does the laundry if she is feeling up to it. Tr. at 282. Ms. Dominguez rises in the morning about 7:00 a.m., and after a small breakfast (if she feels like eating), watches TV for several hours.

---

[1] Plaintiff also alleges a thyroid condition which, as the ALJ noted, is controlled by medication. Tr. at 15, 301-02.

12. She spends the afternoon listening to the radio, and on Wednesdays reads the newspaper. She does not socialize, but does talk to one neighbor who occasionally stops by to visit. Tr. at 283. She goes grocery shopping with her daughter and walks around the store leaning on the cart. Tr. at 271. There have been times when her anxiety attacks cause her to go back to the car to wait, leaving her daughter to finish the grocery shopping. Tr. at 298-99. Plaintiff told the ALJ that she "takes naps a lot." Tr. at 283. However, on inquiry by the ALJ, Plaintiff told the ALJ that she does not sleep during these periods. Tr. at 285. Two or three times a day (for two to three hours at a time), she lays on her bed and simply "stares at the ceiling." Tr. at 285.

13. Plaintiff stated that she needs to alternate between sitting and standing and cannot sit, stand or walk for more than 20 minutes. Tr. at 271. She cannot lift more than 15 pounds frequently. Tr. at 270-71.[2]

**First Alleged Error**

14. Plaintiff first contends that the ALJ erred by disregarding Plaintiff's complaints of back pain, depression and anxiety, including her need to lie down frequently for several hours during the day and her postural limitations, which she alleges is disabling. From a review of the briefs, this allegation appropriately refers to a credibility finding, and I will treat it as such. I find that these complaints were not disregarded, but were considered even though they were ultimately discounted upon a credibility inquiry. At the same time, the record is lacking in that a full residual functional capacity asessment was not conducted so that the ALJ did not have a complete record on which to base his findings of noncredibility.

---

[2] Her last job required her to lift no more than 15 pounds. Tr. at 270.

15. Plaintiff's argument here is essentially that the ALJ never actually conducted a credibility inquiry. Although the word "credible" or "credibility" does not appear in the decision, such an oversight is *de minimis* when in fact the ALJ's findings relied on a framework used specifically for a credibility inquiry. The ALJ began with the "loose nexus" requirement set out in Luna v. Bowen, 834 F.2d 161 (1987) and Hamilton v. Sec'y, 961 F.2d 1495 (1992), and then went on to examine all the relevant evidence, including both objective and subjective evidence. Further, the factors which the ALJ used in the analysis were those appropriate to a credibility inquiry, such as the effectiveness of medications and consistency of the nonmedical evidence or subjective testimony with the objective medical evidence. Tr. at 16. These factors also include subjective measures of credibility that are peculiarly within the judgment of the ALJ. See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

16. The ALJ noted that Plaintiff's complaints of disabling low back pain and muscle spasms which allegedly caused Plaintiff's postural limitations in sitting and standing were not supported by the record. Dr. Allan Lenetsky, who performed a physical consultative exam in December 1994, opined that Plaintiff's generalized musculoskeletal complaints were "without any substantial evidence [ ] of musculoskeletal disease." Tr. at 147.[3] Dr. Leslie Hayes, a treating physician, opined that Plaintiff's complaints of severe back pain were "not compatible" with disc herniation. Tr. at 194. An x-ray showed "minor degenerative changes." Tr. at 213. Dr. Hayes

---

[3] Dr. Lenetsky's opinion that he considered Plaintiff to be disabled (Tr. at 147), notwithstanding the findings in his report, has little definitive value to the issue here, since the Commissioner, not the physician, is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1) (statement by a medical source that claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine claimant is disabled).

attributed Plaintiff's back pain to muscle spasms, for which Dr. Hayes recommended "symptomatic treatment only." Tr. at 213.

17. The ALJ acknowledged that Ms. Dominguez was not able to perform "strenuous exertional activity," but determined that there was no basis for a finding that she had any "difficulty sitting for prolonged periods of time."[4] Plaintiff has the initial burden to show that she is disabled. Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991). This includes steps three and four, although the ALJ retains a duty of inquiry. See Muskgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992). It is here where the ALJ fell short in his duty.

18. While it is true that Plaintiff's statements of postural limitations were uncorroborated by any medical evidence, all of the medical evidence necessary to make this determination was not included in the record. See, e.g., Luna at 165; Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain).[5] Dr. Hillman's consultative physical examination should have, but did not, include an assessment regarding how long Plaintiff can sit or stand, or how much weight she can carry. See Gathright v. Shalala, 872 F.Supp. 893 (D.N.M. 1993) (citing Rivera-Torres v. Secretary of Health and Human Services, 837 F.2d 4, 6 (1st Cir.1988)).

19. Plaintiff's complaints of disabling depression were similarly discounted by the ALJ.

---

[4] Contrary to Plaintiff's rather technical argument, this constitutes a credibility finding on this issue, since the ALJ made this determination upon an examination of the factors relevant to a credibility inquiry.

[5] Plaintiff's statement to Dr. Hillman that she has "good energy" in the morning for about an hour and then needs to lie down because she becomes tired does not speak to her alleged postural limitations due to back pain. See Tr. at 144.

7

The ALJ noted that she was still subject to feelings of depression and anxiety, see e.g.., Tr. at 164 (that Plaintiff was "heavily oppressed by her current life circumstances , i.e., her medical problems, inability to work, lack of income and medical insurance).[6] Plaintiff had told Dr. Hillman that she cannot work because it was "hard to motivate herself to leave the house." Tr. at 144. The ALJ also noted that Plaintiff stated that although her sleep habits hadn't improved, the medications (imipramine and Xanax, among others) had taken the edge off her depression and reduced the frequency of her panic attacks. Tr. at 266, 279. A March 1996 treatment note by Plaintiff's counselor states that her "[m]ood is normalizing." Tr. at 221. Further, Plaintiff stated to her therapist during a psychiatric assessment that she felt stabilized and "controlled" by the anti-depressants.[7] Tr. at 175. In fact, Plaintiff declined to continue therapy because she felt that the medications were controlling her symptoms at the time. Tr. at 175.

20. The ALJ also noted that there was some inconsistency as to the reasons Plaintiff gave for quitting work. At one point, she blamed medical problems, Tr. at 276, 287, another time cited her chronic back pain as a reason, Tr. at 143, and during the hearing told the ALJ that she had been thinking about quitting because she had been missing work frequently, but finally decided to quit along with the other workers when the store was robbed.

---

[6] For a period of time, Plaintiff was financially unable to get some of her prescriptions filled. Tr. at 155, 163. She did obtain some assistance from a church organization, Tr. at 176, 287, and by March 1996 was receiving Medicaid and was therefore able to get the necessary prescriptions filled. Tr. at 221.

[7] The record also contains the report of John Lang, Ph.D. in which Dr. Lang opined that Plaintiff suffered from disorganization and mental confusion, that she cannot appropriately manage her emotions, that she had "many unconventional and delusional thoughts," and that there was "no indication of malingering." Tr. at 105. Respondent correctly notes that this report, however, is from 1988, which is outside of the relevant adjudicated period.

21. On remand, a complete medical consult should be ordered to include a residual functional capacity assesment to address Plaintiff's complaints of postural limitations, which should then be incorporated into another credibility inquiry.

**Second and Fourth Alleged Errors**

22. I will consolidate Plaintiff's second and fourth alleged errors, since they are both based on Plaintiff's psychiatric impairment and the evidence from the record supporting the impairment. Specifically, Plaintiff contends that the ALJ erred by finding that Plaintiff's psychiatric problems were under control and also that the ALJ erroneously interpreted the psychiatric evidence.

23. In my findings above, see ¶ 19, I have already concluded that the ALJ's findings regarding Plaintiff's mental impairment are supported by substantial evidence. Thus, the ALJ's determination that Plaintiff's psychiatric problems were under control was not in error. The critical inquiry here was whether this nonexertional impairment significantly limits Plaintiff's ability to work (here, at her former keypunch operator job), not whether the depression and anxiety are completely controlled, as Plaintiff contends.

24. The inquiry here also included the ALJ's conclusions regarding Plaintiff's mental impairment which were recorded on a Psychiatric Review Technique Form ("PRT" form) that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. Tr. at 37-48.[8] The ALJ's conclusions are consistent with the medical evidence regarding Plaintiff's

---

[8] It appears that the ALJ may have completed the form, which was then reviewed by a "Donald K. Gucher, Ph.D." At the hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision. Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 617 (10th Cir. 1995).

depression and anxiety. The reviewer's notes also reflect Plaintiff's difficulties in getting along with the public in her work. Tr. at 48.

25. A step four analysis involves an assessment of a claimant's residual functional capacity. At this stage of the sequential evaluation, the ALJ must engage in a comparative assessment of the claimant's residual functional capacity and the demands of the work the claimant has done in the past to determine whether the claimant can do her past relevant work. Hinkle v. Apfel, 132 F.3d 1349 (10th Cir. 1997); See 20 C.F.R. § 1520(e); SSR 96-8p.

26. The ALJ conducted a proper step four analysis here. The records submitted for review included descriptions of Plaintiff's past work, Tr. at 76-80; 86-87, and at the hearing the ALJ inquired into the requirements of past work, Tr. at 254 - 257. As part of the step four inquiry, the ALJ also enlisted the aid of a vocational expert ("VE") at the hearing in order to determine what the effect of Plaintiff's limitations were on her ability to perform past work. Tr. at 305.

27. However, while I find that the ALJ's conclusion that Plaintiff's depression and anxiety were under control sufficiently to preclude a finding of disability on that basis, I find that the record indicates that these symptoms are significant enough as a nonexertional impairment in possibly limiting Plaintiff's work capacity so that they should have been submitted to the VE in the hypothetical. See Thompson, 987 F.2d at 1487 (nonexertional impairment must be significant enough to reduce work capacity in order to require vocational testimony). For example, although Ms. Dominguez testified that the imipramine helped her depression, Tr. at 276, she also stated that the anxiety attacks still occurred twice a day. Tr. at 269.

**Third Alleged Error**

28. Last, Plaintiff alleges that the ALJ failed to include in his decision the Plaintiff's symptoms and the VE's conclusion in the third hypothetical concerning Plaintiff's need to take frequent breaks which renders her unemployable.

29. The hypotheticals took into account Plaintiff's age, education and past relevant work, her lifting and carrying abilities and her inability to work with things rather than people. The VE opined that Plaintiff could still perform her past work as keypunch operator. Tr. at 305-06. I have already determined that on remand, the hypotheticals should include Plaintiff's mental impairment which is supported by the record, i.e., anxiety attacks that occur about twice a day and last from 5 to 15 minutes. See Tr. at 266. A ruling on whether the hypotheticals should have reflected Plaintiff's inability to sit or stand for prolonged periods would be premature, since the case should be remanded for further development of the record in order to address Plaintiff's these alleged limitations. See ¶¶ 18, 20, above.

30. However, Plaintiff's contention that she frequently needed to lie down or leave the work site should have also been included in the hypotheticals has no merit. This need was discounted in the ALJ's credibility findings, which I have found to be legally correct and based on substantial evidence. See Tr. at 16. On remand, therefore, hypotheticals posed to the VE need not include this symptom.

31. In sum, I find that (1) the ALJ erred by not obtaining a complete residual functional capacity assessment which included Plaintiff's alleged postural limitations (i.e., inability to sit or stand for more than 20 minutes) (2) the ALJ did not err by finding that Plaintiff's psychiatric problems were under control; and (3) the ALJ erred in that he should have included in the hypotheticals posed to the VE Plaintiff's anxiety attacks as described above. I also find that any

11

postural limitations which survive a credibility inquiry on remand should also be included in hypotheticals.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 7]** be GRANTED in that this be remanded to the Commissioner in order to conduct the following: (1) obtain a physical consultation to address Plaintiff's postural limitations and to include this evidence, if appropriate, into another credibility inquiry; and (2) to obtain additional VE testimony on hypotheticals which include both Plaintiff's anxiety attacks as described above as well as any postural limitation which survive the credibility inquiry. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE